# JOHN O. STORY v. STATE.

No. A-9836.   Dec. 17, 1941.

(120 P. 2d 387.)

274

Newman & Phillips, of Durant, and Keith & Allen, of McAlester, for defendant.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Bill Steger, Co. Atty., of Durant, for the State.

BAREFOOT, P. J. Defendant, John O. Story, was charged in the district court of Bryan county with the crime of murder, was tried, convicted and sentenced to serve a life term in the penitentiary, and has appealed.

This case is the outgrowth of a charge that defendant murdered his wife, Ethel Story, in Durant, Bryan county, on the 23rd day of August, 1938, by placing her in a certain outhouse located back of his residence and then setting fire to said building and burning her to death. The case-made was filed in this court on the 8th day of April, 1940. On the 10th day of October, 1940, application was made to this court to withdraw the case-made for the purpose of making certain corrections to the same, and an order was entered on the 17th day of December, 1940, permitting the withdrawal of the case-made "under the supervision of the trial court upon proper notice to the adverse parties." A hearing was had by the trial court and the case-made as amended and corrected is now before us for consideration.

Several briefs have been filed by counsel representing defendant. Considering these briefs together, it may be stated that as grounds for reversal it is first contended that the court erred in denying the motion for change of venue. This motion was based upon the circulation of newspapers in Bryan county containing articles about the case, and especially with reference to the circulation of a detective magazine upon the streets of the city of Durant which contained an article with reference to defendant and to the facts in this case. A copy of the magazine is now attached to the case-made. The article is one of fiction based upon defendant's case. The record is very meager as to the exact facts with reference to the disposition of the motion for change of venue. When the case-made was sent back for correction under supervi-

sion of the trial court, the detective magazine was attached to the case-made and made a part thereof. The article contained therein was a write-up of this case and was very unfavorable to the defendant. About 500 copies of this magazine had been sold in the city of Durant before the trial. However, the record discloses that a special venire of jurors was selected from a section of the county other than from the city of Durant. The record does not disclose the examination of any of the jurors on their voir dire examination, and there is nothing in the record to show that any member of the jury had read the article in the detective magazine or had ever heard of the same. There were allegations in the motion for continuance by reason of certain articles that had appeared in the newspapers of Bryan county, but nothing in the record to show what these articles were or that any of the jury had read any of the same. There was no affirmative proof on behalf of the defendant, and the burden was on him to show that there was bias or prejudice against him in Bryan county to the extent that he could not secure a fair and impartial trial in that county because of such bias and prejudice of the citizens of that county. It appears from the record that, when the motion for continuance was presented to the trial judge, he and the attorneys for the defendant and the county attorney retired to the chambers of the court and discussed orally the motion. No record was made. It was agreed among them that they would go back into the courtroom, and if a jury could be secured that was satisfactory and no prejudice was shown to exist among them, that the trial would be proceeded with, but that, if the court became convinced that an impartial jury could not be secured, he would grant the motion for change of venue. As far as the record is concerned, no other action was taken by defendant, and the jury was selected and the

trial proceeded with. No evidence was offered by defendant to support the allegations of his motion for change of venue, except the affidavits of three citizens of Durant that, in their opinion, defendant could not have a fair and impartial trial in Bryan county by reason of the bias and prejudice of the citizens of that county. The county attorney submitted the affidavits of 30 citizens of the county who said that, in their opinion, no such prejudice existed, and that defendant could secure a fair and impartial trial in the county. Under the above facts and the rulings of this court, this was a matter within the sound discretion of the trial court. There is nothing in the record to show that this discretion was abused.

In the late case of Abby v. State, 72 Okla. Cr. 208, 114 P. 2d 499, in which the defendant was given a death penalty, we had occasion to discuss this question and referred to the previous authorities from this court which had established the rule with reference to when a change of venue should be granted. It is unnecessary to again review them. We have come to the conclusion that the record does not sustain the motion and that the trial court did not err in overruling the same.

The second assignment of error is that the verdict is contrary to and is not supported by the evidence, it being insisted that the evidence was circumstantial and that the death of Ethel Story was an accident. In this connection, it is insisted that the state failed to establish the corpus delicti. We have carefully read and reread the record in this case. The case was first submitted on briefs and oral arguments on the 29th day of January, 1941. After a careful consideration of the briefs and the record this court ordered that it be reargued, and this was done on the 23rd day of October, 1941. We

have again carefully considered the record. The evidence to a great extent was circumstantial. The deceased, Ethel Story, was burned to death in a small outbuilding at the home of herself and defendant in Durant, Bryan county, on the night of the 23rd day of August, 1938, at about 11 p.m. It is unnecessary to give a detailed statement of the evidence. As above stated, it is highly circumstantial. We have carefully studied it and have come to the conclusion that it was sufficient to establish the fact of the death of deceased, Ethel Story, and that the defendant was guilty of the crime as charged. This conclusion, of course, is based upon the fact that defendant was tried before a jury, and the jury, after hearing the evidence, returned a verdict of guilty. This court does not sit as a trial court, and it is not for us to say what our verdict would have been had we been members of the jury, but our duty ends when we determine whether there is sufficient evidence to sustain the verdict. This court has always followed the rule that the verdict of the jury will not be set aside where there is a conflict in the evidence or where the evidence is sufficient to sustain the same. It is only when there is insufficient evidence to sustain the verdict that it will be set aside. Cooper v. State, 61 Okla. Cr. 318, 67 P. 2d 981; Phillips v. State, 64 Okla. Cr. 454, 82 P. 2d 246; Edwards v. State, 72 Okla. Cr. 327, 115 P. 2d 918.

In the instant case the defendant was seen in close proximity and at the home just prior to the burning of the building, and was also present while the same was burning. Many circumstances were testified to and statements made by the defendant in the presence of others and to members of his family at the time of the fire, also the conduct of defendant and other circumstances which the jury had the right to consider. In

addition to this, evidence was introduced by the state which tended to show a motive for the crime, and also statements made to officers after defendant was placed in jail. Defendant also testified that he had served a term in the penitentiary in Illinois for train robbery. All of this evidence was for the proper consideration of the jury.

It is urged for reversal of this case that the statement made by defendant to a private detective who was employed by the sheriff to assist him in securing evidence in this case and who lived at Sherman, Tex., and was a special detective for the Frisco Railroad Company and also carried a special commission as deputy sheriff of Bryan county, was error. This party had been used by the sheriff of Bryan county on other occasions in assisting him in securing evidence in criminal cases in that county. It is contended that the statement as testified to by this officer and by W. O. Taylor as sheriff of Bryan county was not a confession, but was an extrajudicial statement involuntarily made and therefore inadmissible. It was almost a year from the time that deceased was burned to death until the date of defendant's arrest. The date charged was August 23, 1938. The defendant was arrested on August 14, 1939. He had remarried on the 12th day of November, 1938, and was living with his wife and the children of himself and deceased at De-Queen, Ark., at the time of his arrest. He was brought from the State of Arkansas to Bryan county, where he was placed in jail. It was while in jail in Bryan county that the statement was made by him to Mr. D. C. Robnett, of Sherman, Tex., a special officer for the Frisco Railroad Company, as above stated. This statement was made in the presence of Sheriff W. O. Taylor of Bryan

county and the county attorney of Bryan county. His testimony on this point was as follows:

"Q. What was the first statement that Mr. Story made to you in which he—what connection he had with his wife's death at the fire on August 23, 1938? A. He said that he was responsible for her death. Q. Where was that statement made? A. In the jail office at the county jail. Q. Did Mr. Story make a statement whether anybody else was responsible or connected with him in the commission of this offense? A. He said there was not. Q. Tell what he said? A. He said there was not. Q. Were both of those statements voluntary? A. Yes, sir. Q. Who was present when he made the statement? A. The first time he and I. Q. Later following that statement, did he make any statement—did he later repeat that statement? A. Yes, sir. Q. When was that? A. I believe that was the same time. Q. Where was that statement made? A. In the county jail office. Q. At the time that he made a statement to you and the sheriff, was he advised that he did not have to make it? A. Yes, sir. Q. You advised him that any statement could be used for or against him? A. Yes, sir. Q. You are certain about that? A. Yes, sir. Q. Did you advise him that he could hire a lawyer? A. Yes, sir. Q. Did you threaten him any way? A. No, sir. Q. Did you use any force? A. No, sir. Q. Did you offer him any reward? A. No, sir. Q. What statement did he make to you? A. He made practically the same statement that he was responsible for her death. Q. Did he say anyone else was responsible with him? A. He said there was not. Q. Were you in Durant last Sunday? A. Yes, sir. Q. Where? A. In the jury room in the county jail. Q. Did he make a statement to you again—Mr. Story? A. Yes, sir. Q. What statement did he make? A. He made several of them. Q. Did he make a statement to you as to what part he had— By Mr. Newman: Let him tell it. A. He made the statement that he intended to plead guilty and accessory to the fact and take his sentence. Q. Did he make any other statement? A. Yes, sir. Q. Mr. Robnett,

did he ever make a statement to you in my presence? A. Yes, sir. Q. That statement made in mine or your presence, was he fully advised that he didn't have to make the statement and he was offered no reward and advised that he did not have to make the statement? A. Yes, sir. Q. What statement did he make? A. He told me that he burned his wife. Q. Did he make a statement whether anybody else was connected with it? A. He said there was not. Q. Have you worked on this case in this county and other cases besides the Story case? A. Yes, sir. Q. At whose request? A. Sheriff Taylor. By Mr. Steger: That is all."

This witness also testified:

"A. I asked him concerning his relations between him and this last woman that he married and he said that she had nothing to do with it. He said she had no connection wtih it and said she should be released and said there was nobody connected with it besides himself and Mr. Story cried and asked if she would take the older boy back to Arkansas and said we had enough to convict Jesus Christ and he meant that in connection with the death of other members of his family. He said that he was responsible for this wife's death and nobody else was connected with it. Q. Were any of these statements reduced to writing? A. No, sir. Q. Why didn't you do that? A. He said it was too heavy a burden and said it would take at least four days to write it out. He agreed to make a statement on this particular death. Q. And none of these statements were ever reduced to writing or signed by him? A. No, sir."

The evidence of Sheriff Taylor of Bryan county corroborated the evidence of this witness with reference to statements made by defendant in his presence. From this evidence it does not appear that the statement was involuntary, but was, on the other hand, a voluntary statement. It, together with the other evidence in this case, was properly submitted to the jury and was for their consideration under the law as it exists in this

jurisdiction as applied to the facts and the evidence, and it will not be set aside by this court. This question has recently been considered in the case of Sealy v. State, 65 Okla. Cr. 356, 87 P. 2d 166, 169. In that case referring to voluntary and involuntary statements it was said:

"This court in many cases has discussed the question of the admission of voluntary and involuntary statements, and especially with reference to statements made to officers who have parties in their custody and under arrest. A case decided on January 27, 1939, * * * Ben R. Williams v. State [65 Okla. Cr. 336], 86 P. 2d 1015, this question is fully discussed and it is stated therein there is at times seemingly a conflict between the decisions, but this is generally caused by the facts of each individual case. We again state that the mere fact a confession or statement is made to an officer while the accused is under arrest, in or out of prison, or is drawn out by his questions does not necessarily render the confession involuntary. Taylor v. State, 27 Okla. Cr. 165, 225 P. 988; Mays v. State, 19 Okla. Cr. 102, 103, 197 P. 1064, 1065; Jewell v. State, 41 Okla. Cr. 389, 273 P. 366; Reagan v. People, 49 Colo. 316, 112 P. 785; State v. Blodgett, 50 Ore. 329, 92 P. 820."

The Mays Case, supra, [19 Okla. Cr. 103,, 197 P. 1065], also gives a full discussion and is the case upon which the Sealy case is based. It is there stated:

"In a trial for murder, held, on the evidence that whether the alleged confessions of the defendant were voluntary was for the jury. Held, further, that where the voluntary nature of the confessions was submitted to the jury under proper instructions, a verdict against the defendant is conclusive on the issue.

"An extrajudicial confession of the defendant is not sufficient to warrant his conviction without additional proof that the crime charged has been committed. There must be, in addition to the confession, proof of the corpus delicti, and where the corpus delicti is estab-

lished by independent evidence, a conviction based upon the defendant's voluntary confession is warranted."

And in the body of the opinion it is said:

"This court has held repeatedly that it has no power to reverse a judgment of conviction upon the ground that the verdict is not supported by the evidence, unless there is substantial evidence tending to show the guilt of the defendant, or the evidence fails so far to support the verdict that the necessary inference is that the jury must have acted from partiality or prejudice, or have been controlled in reaching their verdict by undue influence. This court adheres to the rule that a conviction cannot be had on the extrajudicial confessions of the defendant without independent evidence of the corpus delicti, and, before such confessions should be admitted, there should be evidence prima facie sufficient to show that the offense to which the confession relates has been committed. The court must decide in the first instance this question. However, the decision of the court does not bind the jury, as the province of the court in such particular is only to determine whether sufficient evidence has been adduced to go to the jury for their determination. In passing upon the evidence submitted to them the jury must first determine beyond a reasonable doubt that the crime has been committed; then they are at liberty to give the alleged confession such weight as it is entitled to, taking into consideration the circumstances surrounding it and the extent to which it has been corroborated. In this case the corpus delicti was proved by independent evidence, and if the confessions of the defendant were voluntary and admissible, the issue of the defendant's guilt or innocence was clearly a question for the jury."

It is further stated:

"It was and is earnestly insisted that the alleged confessions of the defendant were made under such circumstances as rendered them involuntary.

"A confession is a voluntary statement made by a person charged with the commission of a crime, wherein

he acknowledges himself to be guilty of the offense charged, and discloses the circumstances of the act, or the share and participation which he had in it. Wilson v. State, 17 Okla. Cr. 47, 183 P. 613.

"Extrajudicial confessions are those which are made by the defendant out of court, whether to an official or nonofficial person. It is elementary law that such confessions, in order to be admissible, must be entirely free and voluntary. The rule is well established that confessions induced by a promise of benefit or a threat of harm, made to the defendant by a prosecuting attorney or an officer having him in custody, or by any one having authority over him, or made by a private person in the presence of one whose acquiescence may be presumed, will be deemed involuntary, and will be inadmissible as evidence. Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L.R.A. 1917D, 383.

"The object with which the law admits a confession in evidence is to obtain truth. The only ground on which a confession is rejected is that the circumstances under which it is obtained have a tendency to falsehood; and therefore the object with which it is admitted, instead of being secured, is likely to be frustrated. Bishop says:

" 'The doctrine, in its essence and divested of its technicalities, is that a defendant's confession is admissible in evidence against him if made freely and without the hope of benefit to his cause; otherwise it is rejected, since its purpose may have been to secure such benefit rather than to disclose the truth.' Bish. New Cr. Proc. par. 1217.

"As Mr. Wharton has well said:

" 'The real question is whether there has been any threat or promise of such a nature that the prisoner would be likely to tell an untruth from the fear of the threat, or hope of profit from the promise.' Wharton, Cr. Ev. § 658."

When the question arises in the trial of a case as to whether or not a confession or statement made by a

defendant is voluntary or involuntary, it is the best practice for the court to excuse the jury and hear the evidence and determine as a matter of law whether such confession is voluntary or involuntary. This question may be decided by the jury, and the court should have the evidence presented anew to the jury and instruct them thereon. The court did not so instruct the jury in the instant case, but permitted the evidence to be presented to the jury and held that it was a voluntary statement. While this was not the best procedure, we do not find the defendant was prejudiced thereby in the instant case so as to necessitate a reversal thereof.

As stated in the Sealy Case, supra:

"We here, however state that it is the best practice for officers who have parties in charge to fully warn them, that any statement made may be used against them. No promises of relief or benefit should be held out. The statement should be wholly voluntary."

The evidence reveals that defendant was first placed in jail at Durant, the county where the crime was committed, and the one having jurisdiction of his crime. He was afterwards taken by the officers, including the special deputy, who was assisting in securing evidence, to Broken Bow in McCurtain county, and was there placed in jail for six or seven hours. He was from there taken and placed in jail at Hugo in Choctaw county. The record is not clear as to why this action was taken. The special deputy testified he was placed in jail at Hugo in Choctaw county for the reason that he was being taken to DeQueen, Ark., his former home, and for this reason he was not returned to Durant. The practice of officers taking persons from one county to another if it be for the purpose of keeping them from consulting with counsel prior to their trial or denying them any constitutional or statutory right cannot be too severely condemned. It

may be proper for officers to take prisoners to some other county if the circumstances warrant, but it certainly should not be done to deny them the privilege of procuring counsel or denying them a constitutional or statutory right or for the purpose of securing from them an involuntary confession or statement.

It is contended that the court erred in giving instruction No. 9. This was an instruction upon the question of alibi. In the first place, the record does not show that an exception was taken to this instruction by the defendant. Under the many decisions of this court the defendant could not sustain this contention for this reason. Jarman v. State, 57 Okla. Cr. 226, 47 P. 2d 220; Patterson v. State, 4 Okla. Cr. 542, 113 P. 216; Stump v. State, 66 Okla. Cr. 391, 92 P. 2d 616.

It may be further stated, however, that the evidence revealed that defendant was in close proximity to where this crime was committed. He was not at such a distance as would justify the giving of an instruction upon the question of an alibi. This question was recently decided by this court in the case of Gregg v. State, 69 Okla. Cr. 103, 101 P. 2d 289, 296, where it is said:

"To entitle the defense of alibi to consideration, the evidence must be such as to show that, at the very time of the commission of the crime charged, the accused was at another place so far away or under such circumstances that he could not, with ordinary exertion, have reached the place where the crime was committed so as to have participated in the commission thereof; and, in a criminal prosecution, unless the evidence fills this requirement of the law, no instruction on the subject of alibi is necessary to be given by the trial court." Barbe v. Territory, 16 Okla. 562, 86 P. 61.

When the case-made was returned to Bryan county for correction by order of this court made on the 17th

day of November, 1940, there was attached to the proceedings a motion for new trial filed by defendant, together with affidavits attached thereto and an order of the court overruling this motion on the 21st day of January, 1941. We know of no authority that would give the trial court the power to grant a motion for new trial when a case-made was ordered sent back for the purpose of correction so that it could show the exact facts that happened at the trial. We have examined the motion and the attached affidavits and do not find anything that would warrant the court in granting a new trial even if it had the authority to do so, but, as stated, we do not think it had such authority. In the decision of this case we have taken into consideration the record as amended when the case-made was sent back for correction.

We have carefully considered this case, and while the judgment is based upon circumstantial evidence, we have come to the conclusion that the jury who heard this evidence and saw the witnesses upon the stand and observed their demeanor were in a position to weigh this evidence and give it better consideration than an appellate court, and it is our conclusion that there was no error in this trial which would justify this court in reversing the judgment and sentence rendered in this case.

For the reasons above stated, the judgment and sentence of the district court of Bryan county is affirmed.

JONES and DOYLE, JJ., concur.