Alva R. CRINER, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A-12457.

Criminal Court of Appeals of Oklahoma,

June 12, 1957.

Alvin C. Bruce, Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Alva R. Criner appeals from the county court of Carter County, where he was charged by information with the offense of driving an automobile while under the influence of intoxicating liquor, tried and convicted by a jury and sentenced to a term of 10 days in the county jail, and assessed in addition thereto, a fine of $75 and costs.

The only assignment of error presented by the appeal is that the trial court committed error in overruling defendant's demurrer to the state's evidence and in refusing to direct a verdict of not guilty.

The casemade recites the testimony of two highway patrolmen who were the arresting officers. With their testimony the state rested and defendant demurred. The defendants testified and rested. There was a sharp conflict in the testimony of the patrolmen and the defendant as to his condition at the time of the arrest. Patrolman Danner testified in part as follows:

"A. My partner and I were about two or three miles south of Ardmore on U. S. 77 travelling north, and we met a '41 Dodge. Immediately before we got to it, it pulled to our side of the road. My partner was driving, and he pulled off on the shoulder. We turned around and followed the vehicle for a distance of approximately half a mile, and while we were following it, we ob-

served that it was weaving from side to side on the roadway. We stopped the driver, Mr. Criner, and asked him to get out of his vehicle, and we noted his condition, he staggered after we got him out of his car, he had the smell of intoxicants on his breath, and we questioned him briefly, and he, you could understand him fairly well, but he would repeat over and over some of his statements. So we asked to get in the patrol car and brought him to the county jail in Ardmore."

"He was in a drunken condition, he staggered, his clothes were disheveled, and as I said before, he would repeat certain statements over and over, well all the way to Ardmore."

On cross-examination the witness testified in part:

"Q. It was a Buick car, too, wasn't it? A. To my knowledge, the best I remember, it was a Dodge."

\* \* \* \* \* \*

"Q. You said there was somewhat of an alcoholic odor, didn't you? A. We smelled intoxicants on his breath.

"Q. What kind, beer, whiskey, or anti-freeze, what was it? A. I don't know.

"Q. Could it have been anti-freeze on his hands and his clothes? A. This was on his breath.

"Q. Did you give him any test or anything? A. No, sir.

"Q. You smelled it pretty, it was pretty rank, too, wasn't it? A. Strong on his breath, yes, sir."

\* \* \* \* \* \*

"Q. Are you sure you smelled his breath? A. Yes, sir.

"Q. You didn't give him a balloon test? A. No, sir.

"Q. You didn't give him any kind of test when you brought him to jail? A. No sir, we have no facilities for that."

Patrolman Duncan testified in part as follows:

"Q. Will you describe for the Court the circumstances surrounding your seeing Alva R. Criner? A. Yes, I was cruising north in the patrol cruiser approximately three miles south of Ardmore near the Lahmoa Courts. We observed him being across the road about three feet across the center, and we pulled off the road and he went by, and he continued to weave on south, we turned around and stopped this car driven by Mr. Criner.

"Q. Did you have Mr. Criner get out of the car? A. Yes, we did.

"Q. What condition would you say he was in when you got him out of the car? A. He was in a drunken condition.

"Q. What would compose a drunken condition? A. He had a very strong odor of intoxicants on his breath, he was unsteady on his feet, and his conversation wasn't, didn't make good sense." * * *

On cross-examination, the witness testified in part:

"Q. Now, what kind of car was he driving? A. It was a '41 Buick.

"Q. Are you sure of that? A. Yes, sir."

\* \* \* \* \* \*

"Q. Didn't he tell you he had been having trouble with that old Buick? A. I don't believe he did say anything about that.

"Q. Didn't he tell you he had been having trouble with the water hose, or about that he had been fixing it? A. I don't believe he mentioned anything about the car.

"Q. He had his work clothes on, didn't he? A. Yes, he was dressed in work clothes."

\* \* \* \* \* \*

"Q. One more question, did you find any whiskey or beer in that car? A. No.

"Q. Did you search it? Naturally you did. A. Yes.

"Q. Did you find anything? A. No."

Defendant, age 61, testified as a witness in his own behalf. He testified in substance that he lives four and three-quarters miles southwest of Ardmore; that at the time of his arrest he was driving an old 1941 model Buick and was on his way home. That he was suffering from high blood pressure and has a bad heart and hadn't been drinking anything for the past five years. That he had a wife, three daughters and two sons. That he had been having trouble with his old Buick car and explained to the officers that the alcoholic odor they smelled on him came from the radiator of his car while he was attempting to adjust the hose connection. He denied that he had been drinking anything in the way of alcoholic liquors at the time of his arrest.

■ It is apparent from the testimony that different inferences could have been drawn as to whether or not the defendant was under the influence of intoxicants at the time of his arrest, or stone sober. This court has held in many previous decisions that the jury is the sole judge of the weight to be given the testimony of witnesses appearing before them. This court said in Sholes v. State, 97 Okl.Cr. 158, 260 P.2d 440, 447:

"Where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, [this court] will not interfere with the verdict even if there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts."

■ We are convinced this case comes squarely within the above rule and though the testimony was conflicting and contained some discrepancies, it was evidently sufficient for the jury, whose exclusive province it was to ferret out and determine the facts

from the evidence before them. Once having done this, we will not question their right to do so if the record contains proper evidence from which they could reach their conclusion. The case is affirmed.

BRETT, P. J., concurs.