**Letora LINZEY, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–12324.**

Criminal Court of Appeals of Oklahoma.

Sept. 19, 1956.

Rehearing Denied Oct. 24, 1956.

Paul R. Haunstein, Enid, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., Dennis L.

Pope, County Atty., Garfield County, Enid, for defendant in error.

POWELL, Judge.

Letora Linzey, alias Sue or Susie Smith, alias Letora Williams, was charged by information filed in the Superior Court of Garfield County with the crime of assault with a dangerous weapon; the case was properly transferred to the district court of Garfield County, and an amended information filed. The defendant was tried before a jury and found guilty of the crime charged, and her punishment was fixed by the jury at four years imprisonment in the State Penitentiary. Appeal has been perfected to this court.

For reversal counsel presents two specifications of error, which also summarize the argument advanced, and we quote in full:

"That the verdict is contrary to the law and to the evidence, and is not supported by the evidence, and that the demurrer of the defendant at the close of the State's case should have been sustained and that the motion for a directed verdict on behalf of the defendant should have been sustained and the jury ordered and directed to return a verdict for the defendant.

"That if the evidence was sufficient to overcome the presumption of reasonable doubt or to submit said case to the jury, then this defendant was denied a fair and impartial trial, by reason of the bias and prejudice of the jury, engendered in part by improper questions of the court, which influenced the jury and denied the defendant a fair and impartial trial.

"Assuming, for the purpose of the demurrer, that all of the evidence was competent, it wholly fails to overcome the presumption of guilt of the defendant beyond a reasonable doubt and the court should have sustained said demurrer."

The defendant did not testify and offered no evidence. We have had the benefit of an exhaustive brief filed on behalf of defendant, as well as two independent answer briefs, one filed by the Attorney General,[1] and one filed by the County Attorney of Garfield County. We have also listened to oral argument and have considered the instructions given by the court, none of which were excepted to. The instructions completely covered law of the case, were generous to the accused, and fairly presented the fact issues to the jury.

The evidence discloses the defendant is a Negro woman. The same may be said as to the assaulted party and all the eyewitnesses to the crime charged.

The evidence developed that one Steve Warren, for about five months the boy friend of the defendant, went to call upon her about midnight on November 12, 1955.

The evidence is conclusive that Steve Warren, while visiting with the defendant, and while she held a paring knife in her hand, wrestled with her and received two cuts, and being a small cut on his left shoulder, a cut in the region of his right forearm, and either a cut or a stab wound in his right chest which entered the cavity. He had to remain in a hospital at Enid for two weeks. On leaving the hospital he was placed in jail in connection with the altercation, and made a statement to the county attorney concerning the facts of the cutting, which was taken down on a recording machine and later transcribed by the secretary of the county attorney. This partially transcribed statement was admitted in evidence, after it developed that the witness had become a hostile witness, and was attempting to make the whole matter out as a pure accident. It reads:

"Q. Now you say you were on the bed rolling with Letora for this knife. Did you feel the knife when it went into your chest? A. Yes.

"Q. And what did you do then? A. I turned the knife and everything loose.

1. 74 O.S.1951 § 18b; 21 O.S.1951 § 577.

"Q. You just turned both she and the knife loose, did you pass out? A. No, I picked up a chair and she came toward me then, I guess she was just insanely mad and I took and knocked the knife out of her hand with the chair.

"Q. She came toward you with the knife in her hand? A. Yeah, and I hit her arm and the knife fell on the floor."

Not only did witness Warren attempt to change his testimony by claiming that the cutting was accidental, but many of his replies when he did not want to give a categorical answer, were impertinent. He testified that one Tipp Ross drove him to Letora's home in Enid on the night in question; that there were a few other people there when they got there. There was one other woman there, Versie Lee Wester. He claimed that after he had been there a while some intoxicated man whom he did not know started an argument with the defendant; that the man was using vulgar words and that the defendant became very angry and went into the kitchen, got a knife and, said he:

"I had the thought in mind, in order to keep someone from getting in trouble, that maybe I could grab her—that I would try to grab her and try to keep from anybody getting in any trouble; so that is what I did; when I saw her, I grabbed her, and we both fell on the bed, and during the rassle, with the weapon—well, I had my hands on her and she had her hands on me, and I accidently got cut."

Witness said that after he got cut he turned her loose, got up and picked up a chair, saw the knife in her hand and hit her on the hand knocking the knife loose, and that he then turned around and walked out the door and was driven to the hospital. He claimed that he was cut in but two places. The medical evidence showed three, with stitches taken in but two. Witness claimed that he had forgotten the third cut. As to the contradictory statement recorded on the recording machine, he was asked:

"Q. You are not denying that you made those statements? A. No, I couldn't deny it if you have got it down."

As to why he made the first statement, he said:

"Well if I did [make the statement] I was sick. I was sick when I got out of jail up there. And people say lots of things when they are sick."

The evidence developed that Steve Warren had been rooming at the house of Sylvester G. (Tipp) Ross, and that he, too, was a friend of the defendant. One Roy Brown, called "Cowboy" was a friend of Ross and had accompanied him to defendant's home the night of the cutting. Versie Lee Wester, another witness and the only other woman present with a large number of men, was defendant's niece. She was in a room with one Chester Carr, and although Roy Brown testified that after the fight she came running out of the house shouting, "Steve is stabbed; someone take him to the doctor," and "Steve is stabbed, don't let him bleed to death", when she testified she denied hearing any commotion at all.

It is significant that the three principal witnesses, Ross, Brown and Warren, agree that some kind of an argument developed in Letora Linzey's living room. It is true that the blame for the commencement of the trouble is attempted to be placed on a "phantom" man who no one knew and no one ever noticed after the defendant got her knife. At all events, her fury, at least temporarily seems to have eventually been directed toward Warren. The physical facts disclose that. Not without significance, is the fact that Tipp Ross and Roy Brown before this midnight rendevouz, had mutually agreed that in case an argument should take place, that they would leave at once. Apparently they were apprehensive of trouble, though they would not say from what source they expected this trouble to emanate.

And when trouble did commence Ross and Brown, as well as the others, immediately vacated the house. Ross said: "There was a little argument started, and we hit the door". He said that thereafter, looking through a window, he could see the defendant and Steve Warren scuffling or "dancing" around in the room holding on to one another for at least two or three minutes, and then Warren came out of the house dripping with blood and immediately thereafter the defendant came to the door. Witness went on to the porch and started to say something to her, whereupon he felt something scratch his face, and looked and saw that defendant had a knife in her hand. At the trial, a month later, witness still had a scar on his face, though at that time he tried to minimize the extent of his injury.

Two officers arrived at the scene of the cutting after Warren had been taken to the hospital. They found a blood-stained paring knife on the front porch of defendant's home. It was received in evidence.

At the close of the State's evidence the defendant interposed a demurrer, which was overruled. Defendant, as stated, did not testify and offered no evidence.

The court instructed the jury to the effect that if they should find and believe from the evidence that Steve Warren was accidentally cut or stabbed by the defendant, that they should find her not guilty of the crime charged, but the jury found that the injury did not come about by accident. There was ample evidence to support such a conclusion.

As was said in Martin v. State, 92 Okl. Cr. 182, 222 P.2d 534, 536, paragraph 4 of the syllabus:

"Where there is any competent evidence, reasonably tending to sustain the allegations of the indictment, [or information] the court should not sustain a demurrer to the evidence."

And see Carter v. State, Okl.Cr., 279 P. 2d 956.

Counsel argues that if there was sufficient evidence to justify the submission of the case to the jury, which he denies, still, defendant is entitled to a reversal on account of the bias and prejudice of the trial judge. He cites two instances where the trial court interposed questions which form the basis for this argument.

The trial required most of two days. The colored witnesses were hostile to the State, and a reading of the record leaves no doubt but that they attempted every way to avoid telling just what they knew of the altercation in which Warren was injured. There were contradictions and stalling. The witness Warren was admonished to speak louder so the jurors could hear, but contended that he could talk no louder. At oral argument before this court, the assertion of the assistant county attorney that it was necessary to place his chair immediately in front of the jury box so that the jurors might hear the witness, was undenied. The court likewise had to come down off the bench and stand near witness Warren in order to hear him. He asked him some questions to hurry the case along. We are impressed that the court was most patient, and find nothing in his conduct of the trial that would call for a reversal of this case.

The record does not justify further detailed analysis of the evidence or comment.

The judgment appealed from is affirmed.

JONES, P. J., and BRETT, J., concur.