Lera Opal KING, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12362.

Criminal Court of Appeals of Oklahoma.

Dec. 19, 1956.

Rehearing Denied Jan. 9, 1957.

Elmore A. Page, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

The plaintiff in error, hereinafter referred to as defendant, was charged in the municipal criminal court of Tulsa, Tulsa County, by information for driving an automobile on a public highway while under the influence of intoxicating liquor; was tried before a jury, convicted, and punishment fixed by the court at ten days confinement in the county jail, and to pay a fine of $75.

For reversal defendant asserts that the trial court erred in overruling her demurrer to the evidence, and her motion for a directed verdict at the conclusion of the State's evidence.

The inquiry, then, is whether or not the State's evidence was sufficient to sustain a verdict and judgment of guilty.

At the conclusion of the State's evidence, the court in overruling defendant's demurrer analyzed the case in this manner:

"I feel this way: that in a sense Mr. Page's statements have merit, but I don't believe they have sufficient merit to cause me to sustain his motion.

In other words, I think there is testimony, I think that is uncontroverted that should go to the jury, and I don't believe it is my province to take it out of the hands of the jury. I think there have been statements by all of the State's witnesses that the defendant was in their opinion intoxicated, and I think Mr. Page elicited some interesting statements on cross-examination. I still believe those statements, corroborated with her actions have definite weight that may actually raise a question that should go to the jury."

And at the conclusion of the entire case, in overruling defendant's motion for a directed verdict of not guilty, the court stated:

"I think this: that there is testimony from each of the State's witnesses that in their opinion she was intoxicated. There is an admission, perhaps, from all three of these same witnesses to the effect that not being experienced in things medically, they didn't know what effect such an accident might have had on her, but I don't believe that their testimony as such as to these two particulars is diametrically opposed. I do believe there is a strong question of fact which should go to the jury, and I don't believe that the weight of the testimony is so great in favor of the defendant that I would be justified in taking the case away from the jury, or in directing them to return a verdict in favor of the defendant. I believe there is a question of fact which they should determine."

The evidence developed that on or about October 27, 1955, at approximately 7 o'clock in the evening, one Bobbie Lee Orton was driving north on South Denver Street in the city of Tulsa, with his vehicle to the right or east of the center of the highway, when his car was struck by an automobile being driven and operated by the defendant, at a location approximately half way between Fourth and Fifth Streets on

said South Denver Street. Mr. Orton said that he was driving at a normal rate of speed in the lane of traffic nearest to the center line and that the vehicle which struck his car apparently came out of a private drive from the opposite side of the street and in attempting to make a right turn south on said Denver Street struck his car. Witness further testified that after the accident occurred he got out of his car in about two minutes and went over to the vehicle which had struck him, and that defendant was sitting under the wheel of said car; that she was bleeding from a cut on her forehead, and that witness smelled alcohol on her breath, and concluded from his observations of her that she was intoxicated. He said that her car was almost entirely in his lane of traffic when it ran into his car. Witness observed a lady in the front seat with defendant, but saw no other person in the car. It was then dark.

Jack Seals, police officer of the city of Tulsa, who investigated the case next testified. He said that when he reached the scene, "Well, I found one car north bound just east of the center line; then one car had crossed the center line and struck the other car head-on." He further testified that the 1954 car identified as the one driven by defendant, was facing the northbound car with a space between them of about two feet. Witness further testified that he found defendant in the office of her husband about 75 feet distant, there were three persons present at the time, and he smelled liquor on all of them. He said that he got to the scene in about ten minutes after the accident was reported; that when he would ask defendant a question her husband would answer. He asked Mrs. King to accompany him to the police station for manual tests for intoxication and she accompanied him. Her husband did not go along. He said that she failed the tests. He gave it as his opinion from observing her that she was under the influence of intoxicants.

On cross-examination witness said that he noticed that Mrs. King had blood on her nose and on her blouse, and that he had suggested that she go to the hospital, but she declined. He did not know whether her injuries had contributed to her failing the manual tests or not. Witness said that defendant told him she had had one drink. She did not say how many ounces the drink included.

Sgt. Al Haddock of the Tulsa Police Department said that he inquired of defendant at the police station as to whether she needed a doctor, and she told him she did not. He testified that he was the officer who gave defendant the manual tests. He said that she could only walk the straight line a step or two and would then stagger off; that she fumbled the coins placed on the floor for her to pick up; and that she was requested to close her eyes and touch the tip of her nose with the tip of a finger. She could not do that every time. He said that he smelled liquor on defendant's breath; and from his observation he concluded that the defendant was drunk. On cross-examination witness stated that he could not tell whether or not the injuries defendant had received in the car accident had caused her to fail the manual tests.

■ From the above it is clear that the trial court would not have been justified in sustaining a demurrer to the State's evidence.

The defendant did not testify, but a number of witnesses testified in her behalf.

Pete King testified that the defendant was his wife; that his office was at 421 South Denver, Tulsa. Other evidence showed this was near the courthouse. Mr. King said that near 5 p. m. the day in question a number of friends had come to his office and he ordered a fifth of Scotch whisky. Mr. King and two prominent citizens of Tulsa consumed several drinks of Scotch mixed with water. He said that his wife and a lady friend took but one drink each, and eventually his wife and this lady got in the front seat of his car and witness and one of his men friends got in the back seat. They were going to

a restaurant for dinner. The defendant thought that witness, her husband, had too many drinks to drive. Witness admitted that his wife in attempting to make a right-hand turn on Denver as she drove out of the parking lot, struck a car that was being driven north on Denver by the prosecuting witness, Mr. Orton. He testified that he and his friend got out of the car immediately after the accident and all went over to his office to look after his wife, whose nose was bleeding. He denied that Mr. Orton came over to his car and talked to his wife, but said that Mr. Orton came over to the office and soon thereafter the police arrived. He denied that his wife was intoxicated. He said that the day after the accident she went to a doctor and it was found that her nose had been broken and her chest had been injured and was sore. He claimed that half the Scotch was left at the time of the accident, and that after the officers took his wife to the police station he and his friend finished the whisky. Later on he went to the police station and posted bond for his wife's release. He said that his wife did not have over an ounce of whisky in her drink, and claimed that the accident was due to his wife's foot slipping off the brake.

Faye Pittman who was riding in the front seat of defendant's car at the time of the accident testified substantially as Mr. King, and denied that defendant was intoxicated. She admitted that she had had one drink. She went to the police station with defendant. She said that at the time of the accident the defendant said her foot slipped off the brake and witness said that defendant got excited and nervous. She was positive that no one came to the car to talk to the defendant. She said that she witnessed defendant take the manual tests at the police station, and she denied that defendant staggered, and denied that she was unable to touch her nose with a finger.

Dr. Williams testified as to the injuries to defendant's nose and chest. He thought it was possible that the injuries could have temporarily affected her reflexes for possibly two hours following the accident.

Marvin Baker testified to leaving Mr. Pete King's office about 8 o'clock the evening of the accident in question. He did not drink, and did not see defendant drink up to the time he left, but did see a number of others drinking. He drove defendant to see a doctor the day following the accident.

Mr. John L. Ward testified substantially as had Pete King.

The court submitted the case to the jury. The defense admitted that defendant had one drink. Some of the State's witnesses thought her intoxicated. However, it was not necessary for the State to prove that defendant was intoxicated or drunk. The court instructed the jury:

"No. 5. You are instructed that if 'intoxicating liquor' has so far affected the nervous system, brain or muscles of the driver of an automobile as to impair, to an appreciable degree, his ability to operate his car in the manner that an ordinary prudent and cautious man, in the full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions, then such driver is 'under the influence of intoxicating liquor' within the meaning of the statute."

The jury concluded simply that the defendant was under the influence of intoxicating liquor sufficiently to impair her ability to drive a motor vehicle and such condition resulted in the collision in question.

We have often said that where there is competent evidence reasonably tending to sustain the allegations of the information, the court should not sustain a demurrer to the evidence. Linzey v. State, Okl.Cr., 302 P.2d 510.

We have further said that a jury's determination upon a conflict in the evi-

dence must be controlling; and unless there are errors of law appearing in the record, a jury's finding of guilt will be sustained on appeal, where there is competent evidence to sustain the finding. Crossett v. State, Okl.Cr., 303 P.2d 453; Hopper v. State, Okl.Cr., 302 P.2d 162; Parris v. State, Okl.Cr., 300 P.2d 687; Matlock v. State, Okl.Cr., 300 P.2d 771.

There was nothing left for the trial court to do but to submit the case to the jury, and this court has no recourse but to affirm, and does affirm the verdict and judgment appealed from.

JONES, P. J., and BRETT, J., concur.