STATE OF MISSOURI, Respondent, v. PETER ZINN, Appellant.

St. Louis Court of Appeals, March 26, 1895.

1. **Criminal Law**: DESTRUCTION OF FENCES. In prosecutions under sections 3592 and 3593 of the Revised Statutes, which relate to the destruction of fences, it devolves upon the state to introduce some evidence tending to show that the land upon which the trespass was committed was in the peaceable and exclusive possession of a person, other than the defendant, under a claim of title adverse to the latter.

2. ———: ———: NONPREJUDICIAL ERROR IN INSTRUCTIONS. But held, that an instruction given to the jury, which was in conflict with the rule stated, in that it treated the question of title to the land as wholly immaterial, did not constitute prejudicial error, since it conclusively appeared from undisputed evidence that the prosecuting witness had the requisite title to, and possession of, the land in question in this case.

*Appeal from the Lawrence Circuit Court.*—HON. W. M. ROBINSON, Judge.

AFFIRMED.

. *Norman Gibbs* and *Cloud & Davies* for appellant.

*Henry Brumback* for respondent.

BIGGS, J.—This prosecution commenced before a justice of the peace. The information charges six separate offenses in that many counts. The first count is drawn under section 3593 of the Revised Statutes of 1889, in which it is charged that the defendant "did unlawfully, willfully and maliciously and wantonly and without right, cut down and injure and destroy a portion of a certain osage orange hedge belonging to and enclosing lands not his own, viz., belonging to and enclosing lands of William Hagemeier, against the peace and dignity of the state."

The second count, which is drawn under section 3592 of the statute, charged that on the eleventh day of May, 1893, the defendant "did unlawfully, willfully and maliciously pull down, injure and destroy a part of a certain wire fence, being the property of another, viz, being the property of William Hagemeier and enclosing the lands of another, viz., enclosing the lands of William Hagemeier, in which said Peter had, and has, no interest, against the peace and dignity of the state." The remaining counts are drawn under said section 3592, and they charge like injuries to the same fence at different dates. The defendant was convicted before the justice and in the circuit court. He has by successive appeals brought the case here for review.

It is not disputed that the defendant committed the acts charged in the information. He and the

prosecuting witness Hagemeier are coterminous proprietors. The defense which was attempted to be made at the trial was that the hedge and fence in controversy was situated near the dividing line between the lands of Hagemeier and the defendant, and that for eight or nine years preceding the commission of the alleged trespasses the defendant had claimed that the hedge and fence were on his land, and not on that of Hagemeier. The court excluded the evidence offered in support of this, and the defendant excepted.

We find a very fair statement of the material facts in the brief of counsel for the state, which we in part adopt, to wit:

"At the time of the offense charged, in May, 1893, William Hagemeier owned and was in possession of and claimed the northwest quarter of northwest quarter, sections 16, 17, 27, in Lawrence county; and the defendant owned the forty acres lying immediately south of it. About the year 1869 and 1870, Jacob Shue owned the forty acres now owned by Hagemeier, and William Hargrove owned the forty acres owned now by Zinn, and other parts of the section were then owned by Brumback and Landrum. At that date Shue, Brumback and Landrum had the county surveyor to survey and subdivide the section, and Hargrove was present and knew of the survey. The county surveyor set corner rocks (among other points in the survey) at the two common points between the northwest quarter of northwest quarter and southwest quarter of northwest quarter. Shortly thereafter Mr. Shue set out an Osage orange hedge along the west line of his forty acres, and also along and near the south line, but about eight feet north of the line determined by the surveyor and marked by these two corner rocks; and Hargrove, soon after, set out a hedge near the north line of his forty acres, but about eight feet

south of the line marked by these two corner rocks.
The purpose of the two parties was to leave a lane or
passageway on the line, to which each was to contri-
bute half.   Thereafter Shue attended to the care of his
hedge, and occupied and claimed all the land within it
and cultivated up to the hedge continuously so long as
he owned it, until the year 1878 when he sold the tract
to Hagemeier and put him in possession.   After his
purchase of the land, Hagemeier occupied all the land
to the north of the hedge planted by Shue, and cared
for the hedge and occupied and cultivated up to the
hedge continuously, and in May, 1893, at the date of the
trespass by Zinn complained of in this case, he had
the ground up to the hedge sowed in wheat, and this
hedge served to inclose his field and protect his crop
of wheat thereon.   In the year 1892–3, proceedings
were had in the county court looking to the establish-
ment and opening of a public road along the line
between sections 16 and 17, and, after the same was
ordered to be opened, Hagemeier (owning at the time
the forty acres next west of his said forty in sixteen),
before the trespasses had opened the road through his
land of full width and more.   At the southwest corner
of his forty acre tract, on which the trespass was com-
mitted, there was an offset to the west, of several feet
in the road.   It was near the southwest corner of the
said northwest quarter of northwest quarter, that Zinn
cut the hedge first and subsequently tore down the
wire fence.   When the offense of cutting the hedge
was committed, the evidence shows that Zinn cut it
down to the ground for a distance of about forty-five
feet eastward from the corner of the two lines of hedge
and about sixteen feet northward from such corner, and
burned up the brush made by the cutting of hedge,
and carried thorn trees into Hagemeier's field and
inclosure for a distance of about eighteen feet and

piled it along, but left an opening of about four feet in width in the west line of hedge at the north end of his cutting, so that such opening left open passageway for any and all stock to enter Hagemeier's field from the public road. So soon as Hagemeier discovered that his hedge had been thus cut, he placed a wire fence on the lines where his hedges had stood and been cut. This wire fence Zinn forthwith tore up, and Hagemeier replaced it, and it was so torn down by Zinn and replaced by Hagemeier the number of times, and more, charged in the information."

To the foregoing may be added that there is no evidence in the record tending to show that the defendant ever had control of the land inclosed by Hagemeier or the hedge or fence, or that he had any care of them or exercised any acts of ownership over them, except those which were merely incidental to several trespasses committed by him. Shue and Hargrove, the original owners of the land, acquiesced in the subdividing line as located by the first survey in 1869, and they adjusted their fences to it; and for the period of fifteen years each claimed to their respective fences (and eight feet outside which was left for a passway). This condition was continued and acquiesced in by the defendant and Hagemeier until seven or eight years prior to the commission of the trespass in controversy, at which time a resurvey of the line was made at the instance of the defendant, which showed that the hedge and fence were on the defendant's land. Since that time the parties have been wrangling as to the ownership of the strip, Hagemeier affirming, that, regardless of the true location of the line, the disputed territory belonged to him by virtue of an adverse possession, and for this reason refusing to surrender it, and the defendant contending that the true dividing line between the two parties was according to the last survey. This condition

of affairs continued until the defendant, at the times charged in the information, undertook to settle the controversy by destroying the hedge and fence, and constructing his own fence on the line of the last survey.

The court, after instructing the jury that the defendant could not be convicted, unless the hedge and fence belonged to Hagemeier and inclosed his lands, gave the following instruction, of which the defendant complains, to wit: "The court instructs you that it makes no difference in this case where the true line may be between the lands of Hagemeier and Zinn; and, that, even though Zinn may have believed that the true line of his land was north of the hedge, or even that in truth it was north of the hedge, yet that fact would afford no defense to Zinn for his having cut or destroyed a portion of the hedge, or having pulled down, injured or destroyed a part of the wire fence, if you believe from the evidence that Zinn did so cut down or injure a portion of the hedge or pull down, injure or destroy a part of the wire fence, unless you believe from the evidence that Peter Zinn owned and claimed the said hedge, or an interest therein."

The theory of the circuit court, as the foregoing instruction clearly indicates, was that the title to the land upon which the hedge and fence are located was an immaterial issue; that the title to the hedge and fence was the material inquiry, and that there could be title in them apart from the ownership of the land. In this we think the court was mistaken.

The language of section 3592, *supra*, is: "Every person who shall   *   *   *   pull down, injure or destroy any   *   *   *   fence   *   *   *   and leave the same down or open, being the property of another, *   *   *   or inclosing the land of another, in which such person has no interest, shall be guilty of a misdemeanor."

VOL. 61—31

Section 3593 provides: "Every person who shall * * * without right break or cut down, injure, take or carry away any portion of a fence, hedge or other inclosure, or any material of which the same is formed, belonging to and inclosing lands not his own * * * shall be guilty of a misdemeanor."

Section 3592 authorizes a conviction, if the accused has destroyed a fence belonging to another, *or* if such fence inclosed the land of another, in which he had no interest. In the violation of this section the information charges that the fence belonged to Hagemeier *and* inclosed his lands, in which the defendant had no interest.

In the first count, which is drawn under section 3593, the defendant is charged with cutting down a hedge belonging to and inclosing lands not his own, etc.

It is very clear that, in prosecutions under the foregoing sections, it devolves upon the state to introduce seme testimony tending to show that the land upon which the trespass was committed did not belong to the defendant, or that he had no interest therein. To that extent it may be said that the title to the land must be shown. We do not wish to be understood as holding that the record or legal title should be fully gone into as in the cases of ejectment, but we do hold that it devolves upon the state to show that, at the time of the alleged trespass, the land was in the peaceable and exclusive possession of another under a claim of title adverse to the defendant. This would tend to prove title *out of* the defendant, which is all that the statute requires. Under this construction it is manifest that the circuit court mistook the extent and nature of the issues, and the instruction complained of was necessarily erroneous. It only remains to see whether it was prejudicial.

The evidence on the part of the state tends to show the following facts: In 1868 or 1869, Shue, the grantor of Hagemeier, and Hargrove, the grantor of Zinn, and the other owners of the section, had a survey made and the lines and corners established. The line now in controversy was then fixed and the corner stones planted, and each party planted and grew a hedge on his own land. They planted their hedges about eight feet inside of the established line for the purpose of leaving a passway between the farms. Both parties recognized the center of the road as the true line, and thereafter they cultivated up to, and took care of, their respective hedges. This condition of things continued for over ten years, when Hagemeier and Zinn purchased, and they continued to treat the line thus established as the true line until about 1885 or 1886, when Zinn had the land resurveyed. The new survey placed the dividing line north of the fence and hedge in question. Since that time the parties have been wrangling over the strip of land, Hagemeier affirming that the old line was the true one, and that, whether it was or not, the disputed territory belonged to him by virtue of an adverse possession, and for these reasons he refused to surrender the possession of it.

The only testimony on the other side is that of the defendant's son. He admitted that, when his father purchased the land, there was a lane between the forties, and that there were hedges growing on both sides of the lane; that this condition continued until a few years after the resurvey, when his father cut his hedge down; that Hagemeier cultivated the other hedge and that he had always refused to deliver the possession of the disputed strip of ground to his father.

This testimony of the son affirmatively supported the exclusive possession of Hagemeier as against the defendant and under a claim of title adverse to him,

and the other evidence leaves no doubt that Hage-
meier's possession had been of such a character and
for such a length of time as to vest in him the title to
the strip of land, regardless of the true location of the
dividing line.   The planting of the hedges by Shue and
Hargrove showed, in a most unmistakable way, their
intention to adopt the survey of 1868, as establishing
the true line.   Neither had any doubt that the land
within his inclosure belonged to him, and neither took
possession under the view that he would surrender it,
if a resurvey should prove that it did not belong to
him.   This condition of things continued under them
for over ten years, and it so continued, as the defend-
ant's evidence shows, until 1888 or 1889, when the
defendant cut down his hedge.

Under the conceded and undisputed evidence, as
above stated, we can. not see how the defendant was
prejudiced by the instruction.   The supreme court has
held in some cases that, where the testimony is clear
and conclusive, an instruction which assumes the truth
of the facts sworn to will not constitute reversible error.
Barr v. Armstrong, 56 Mo. 577;  Caldwell v. Stephens,
57 Mo. 589;  Fields v. Railroad, 80 Mo. 203.   In the
case at bar the evidence which establishes the title of
the prosecuting witness by adverse possession of the
strip of land in controversy is clear, conclusive and
uncontradicted.   No evidence was introduced by the
defendant having any tendency to show a disseizin; in
fact, the finding of the jury, that the title to the hedge
was in the prosecuting witness, necessarily negatived
such disseizin prior to the date of the alleged trespasses.
Had the court, by its instructions, assumed title to the
controverted strip in the prosecuting witness, it would
not, under the decisions cited above, have furnished
ground for reversal.   We are not warranted in revers-
ing the judgment on the purely technical ground that

the court, instead of so assuming, declared that title to the strip was an immaterial inquiry.

With the concurrence of the other judges, the judgment of the circuit court will be affirmed. It is so ordered.