## ED BARTELL v. STATE.

No. A-119. Opinion Filed November 21, 1910.

1. **APPEAL AND ERROR—Admission of Evidence—Necessity of Exceptions.** An assignment that the trial court erred in admitting certain testimony, will not be considered where no exception was taken to the court's ruling.

2. **HOMICIDE—Shooting With Intent to Kill — Instructions.** Sec. 2307 of Snyder's Comp. Laws provides that every person who intentionally and wrongfully shoots, shoots at, or attempts to shoot at another with any kind of firearm, with intent to kill any person, is punishable, etc. The court instructed the jury that if they believed from the evidence beyond a reasonable doubt that the defendant intentionally and maliciously shot at the prosecuting witness with a gun with the intent to kill her, they should convict him; and in the same instruction defined malice as including "not only anger, hatred and revenge, but every unlawful and unjustifiable motive used by a person in the commission of an act." *Held,* not error.

3. **SAME—Use of Deadly Weapon—Presumptions.** Upon an indictment for intentionally and wrongfully shooting at a person with a firearm with the intent to kill, the presumption that the shooting was wrongful may arise from all the facts and circumstances in the case, but the law draws no such inference from the sole fact that the weapon used was a deadly one.

4. **SAME—Intent—Ingredients of Offense.** Under section 2307 of Snyder's Comp. Laws, any intentional shooting at one person by another, not authorized or justified by law, is wrongful; and if done with the intent to kill, constitutes the statutory assault with intent to kill.

5. **INSTRUCTIONS—Assuming as True Undisputed Facts.** It is not error for the court in his instructions to the jury to assume as true a fact which is absolutely and incontrovertibly proven and is wholly undisputed.

(Syllabus by the Court.)

*Appeal from District Court, Pittsburg County; Preslie B. Cole,*
*Judge.*

Ed Bartell was convicted of an assault with intent to kill,
and his punishment assessed at imprisonment in the penitentiary
for a term of three years. He filed a motion for a new trial,
which was overruled, and he appeals. Affirmed.

*Leighton Worthley* and *J. H. Wilkins,* for plaintiff in error.
*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty.
Gen., for the State.

No briefs reached the reporter.

RICHARDSON, JUDGE. The indictment in this case charged
that plaintiff in error, on April 18, 1908, committed an assault
with intent to kill upon one Eva Ford by then and there shooting
at her with a loaded gun.

Plaintiff in error urges three grounds for a reversal of the
judgment below, the first of which is that the court erred in
permitting G. W. Martin to testify to certain statements and
declarations made to him by Eva Ford in regard to the shooting
some eight or ten minutes after the shooting was over. We
find that David Martin and John A. Harrison gave similar tes-
timony, but the case-made discloses no exception to the admis-
sion of any of this evidence, and the assignment is therefore un-
availing.

Plaintiff in error complains of the following instructions
given by the court to the jury:

"The court instructs you that if you believe from the evidence
in this case that the defendant, Ed Bartell, at any time prior to
the 21st day of October, 1908, the date of the filing of the indict-
ment in this case, and after the 16th day of November, 1907, the
date of the admission of Oklahoma as a state, that is to say, if
you believe that prior to October 21st, 1908, the date of the
filing of the indictment and after statehood, that in Pittsburg
County, Oklahoma, that the defendant with any kind of fire-
arm, gun or pistol, intentionally and maliciously shot at or at-
tempted to shoot at one Eva Ford, with the intent to kill the
said Eva Ford as charged in the indictment, then you will find

the defendant guilty of the crime of assault with intent to kill: and you are further instructed that the word wilful as here given means intentional and the word malice means not only anger, hatred and revenge, but every unlawful and unjustifiable motive used by a person in the commision of an act."

The complaint is that the court here used the expression "intentionally and maliciously shot at" instead of the statutory expression, "intentionally and wrongfully"; but the court told the jury in that same paragraph that malice meant "not only anger, hatred and revenge, but every unlawful and unjustifiable motive used by a person in the commission of an act." Would it have been error for the court to have told the jury that if they believed and found from the evidence beyond a reasonable doubt that the defendant intentionally and out of anger, hatred or revenge or from any other unlawful and unjustifiable motive, shot at the said Eva Ford with a gun with the intent to kill her, then they should find him guilty? We think not. *Hodgkins v. State,* 36 Neb. 160, 54 N. W. 86. And substituting for the word "maliciously" the definition which the court gave of the word, we find that to have been exactly what the court instructed the jury. Any intentional shooting by one person at another, not authorized or justified by law, is wrongful within the meaning of the act in question; and if done with the intent to kill, constitutes the statutory assault with intent to kill.

The court in connection with the above instruction also instructed the jury as follows:

"In a case of an asault with intent to kill, the law presumes malice from the use of a deadly weapon and when this presumption arises, it casts upon the defendant the duty of repelling the presumption of malice, unless the evidence which proves the offense also shows that it was perpetrated without malice  *  *  *."

This instruction is assigned as error. We presume that the court here used the word "malice" in the same sense in which he had previously defined it and used it, that is, as implying the wrongfulness of the act; and if that is true, we agree with counsel for plaintiff in error that this instruction is not a correct

statement of the law in this character of case. The presumption that the act was wrongful might arise from all the facts and circumstances in evidence in the case, but the law draws no such inference from the sole and single fact that the weapon used was a deadly one.

The statute under which this indictment was drawn is simple. It provides that "Every person who intentionally and wrongfully shoots, shoots at, or attempts to shoot at another, with any kind of fire-arm, air gun or other means whatever, with intent to kill any person, * * * is . punishable by imprisonment," etc., Wilson's Rev. & Ann. Stat., sec. 2206, Snyder's Comp. Laws, sec. 2307. In his instructions the court should have abstained from all common-law verbiage, none of which is used in this statute, and have told the jury in plain language that if they believed from the evidence beyond a reasonable doubt that the defendant. intentionally and wrongfully shot at Eva Ford with a certain gun with the intent on his part to kill her, then they should convict him. This would have been more readily understood by the jury. The court might have defined the word "wrongfully" in a concrete way by telling the jury that if the defendant intentionally shot at Eva Ford while she was fleeing from him and while she was not attempting to do him any injury, then the shooting was wrongful within the meaning of the statute. That would have been a sufficient definition of the word for this case. But the word "malice" is not used in the statutory definition of this offense, and has no place in the instructions. Under the evidence in this case, however, we are unable to see how the defendant was prejudiced by the instruction, for in fact there existed no necessity for the court's submitting to the jury the question of the wrongfulness of the act at all. That the shooting was wrongful was proved beyond all controversy, and was nowhere disputed. The following was the evidence in the case:

David Martin testified in subtance: I am acquainted with the defendant, Ed Bartell, and his wife, Bertha, and I knew Eva Ford when I saw her. I was passing Ed Bartell's home late in

the afternoon; the porch of the house in which Bartell lived formed a part of the side-walk, and in passing I walked over the porch. As I got on the porch Bertha Bartell, the defendant's wife, ran out of the house with her face all beaten up and bleeding, and she said, "I wish you would 'phone for the police." I asked her what was the matter and she said that Bartell had done it. Bartell ran out at this time, and he says, "I did it, what is it to you?" To which I replied, "It is nothing to me if you kill them all." About this time Eva Ford came out of the house and she and Bartell's wife and a little child started to run. Bartell yelled for them to stop; they refused to stop and he went to shooting at them with a pistol. He followed them up and shot at them. He shot two or three times. He was less than sixty yards from them when he was shooting at them. This was somewhere about eight o'clock at night. It was getting dark. I don't know which way the defendant was shooting except from the blaze. That showed that he was shooting south, the direction the women were going.

Will Anderson testified in substance as follows: I knew Eva Ford. She was about 22 years old, I reckon. She was staying at Ed Bartell's place. I heard a row going on there that night, shooting it was, taken place I reckon about 7 o'clock at night up there at the store right above his house, Mr. McIlroy's store. I heard a woman hollering, "murder", and I heard a gun fired. I was standing at the restaurant at the time and I ran around and saw a woman laying down hollering "murder," and I heard him tell her, "Get up and go back to that house, God damn you;" Ed Bartell said that. When I got around there the shooting was over. He pulled her up and she broke and run across the street and ran back to the house; I heard about four shots, sounded like a small pistol. The girl was on the ground about thirty yards from the defendant's house. She fell off the porch of the meat market and ran across the street and fell down hollering. She was just hollering "murder, don't kill me, Mr. Bartell." I

didn't see the defendant with the gun and didn't see him shoot. The shooting was over before I could get around in sight.

G. W. Martin testified in substance as follows: I know Ed Bartell and remember the night of the difficulty at his house. I think it was sometime in April. I don't remember exactly. It was sometime in the spring. The first I knew of it I heard some screaming and hollering up there and heard three or four shots. I was standing on the gallery of the store at that time in view of the Bartell place. I could see the parties up there but I could not recognize them. A little later Bertha Bartell ran down to the store. I knew Eva Ford but wasn't personally acquainted with her. Just knew her when I saw her. She stayed at Bartell's. I heard some one hollering to 'phone for the police and I stepped across to put in a call. I saw the crowd come out of Bartell's house. I heard screaming before they came out of the house and after they came out of the house. Women and children were doing the screaming. In four or five minutes Eva Ford and Bertha Bartell came to my place. Bertha was skinned up right lively and was bleeding. Eva Ford ran in behind me, sorter came in behind the door on the inside and I said, "What in the world are you doing back there?" She says, "Hiding," and I says, "What's the matter?" she says, "He has been shooting at me," and I says, "Did he hit you?" She says, "I don't know," and she was rubbing her left hip. I asked her if she was badly hurt and she said no, not that she knew of. She was hurt some way and I told her to get out on the gallery. I didn't recognize the defendant. I could see the blaze of the pistol or the gun, whatever it was. The blaze showed that the shots were fired south up the street in the direction the parties were running from the house. At the time I saw the blaze of the pistol I could see the parties running in front. I could see the bulk of them. The pistol seemed to be fired in the direction the women were running. I couldn't identify the defendant as being the man who did the shooting. I don't know whether Eva Ford was shot except from what she said.

John A. Harrison testified in substance as follows: ' I am the sheriff of Pittsburg county, and have known the defendant, Ed Bartell, for two or three years. I knew Eva Ford. I remember the occasion of the difficulty. I arrived on the ground shortly after it was over. The defendant had then been arrested by the police, and the police were taking him away when I arrived. They were then about 75 or 100 yards from Bartell's house, and I went on to Bartell's house, and found Bertha Bartell and Eva Ford. Eva Ford said she was shot in the hip. I examined her clothing and saw a hole in her clothes that looked like it might have been made by a bullet wound on her hip. It was the left hip. I did not see the wound but I saw the hole in her top dress, and the next dress and a third garment. I don't know whether this was a bullet hole or not. It didn't seem to be a torn place. The hole was in the same place and presented the same appearance in each garment. I didn't examine her personally. Just took her word for it that she was shot.

The state offered in evidence the subpœna issued for Eva Ford and the return thereon to show that the state had been unable to find her as a witness. The state thereupon rested.

Ed Bartell took the stand in his own behalf and testified that he was arrested on the 5th day of May and incarcerated in the city calaboose, and on the 7th day of May was transferred to the county jail. Q. By Judge Cole: "What was the statement of the witness in regard to the time this shooting took place?" A. "5th of May. I was arrested on the 5th, that evening." The defendant testified to no further facts, and rested without introducing any other witnesses. The indictment alleged that the offense was committed on the 18th day of April, and the defendant seemed to proceed on the mistaken theory that if it was shown to have occurred in May, the variance would be fatal.

The wrongfulness of the shooting was perfectly apparent; it was certain. There was no question in regard to it. The circumstances proved it beyond even a possible or an imaginary doubt, and without a scintilla of evidence to militate a hair's

weight against it. It is not conceivable how shots fired by a man at women whom he has beaten up and made to flee before him, could be otherwise than wrongful. It was not contended otherwise. And if under the evidence in this case the court had omitted all reference to malice, to presumptions and repelling them, and had merely told the jury that if they believed from the evidence beyond a reasonable doubt that the defendant intentionally shot at Eva Ford with a gun and with the intent to kill her, then the act was wrongful and they should convict, there would have been no error. It might be otherwise if the state of the record were different. But here there were in fact only two questions: did the defendant intentionally shoot at Eva Ford, and if so, did he have the intent to kill her? And under this record the court could have gone further than he did go, and have assumed and stated as true the demonstrated and undisputed fact that the act of firing the shots was wrongful within the meaning of the statute, leaving it to the jury to determine whether they were fired at Eva Ford, and if so, whether with the intent to kill her. *Cupps v. State,* 120 Wis. 504, 97 N. W. 210, 102 Am. St. Rep. 996; *State v. Mortimer,* 20 Kan. 93; *Wagoner v. Territory,* 5 Ariz. 175, 51 Pac. 145; *Welsh v. State,* 60 Neb. 101, 82 N. W. 368; *State v. Miller,* 190 Mo. 449, 89 S. W. 377; *Ragazine v. State,* 47 Tex. Cr. 46, 84 S. W. 832; *State v. Watson,* 47 Or. 543, 85 Pac. 336; *State v. Moore,* 101 Mo. 316, 14 S. W. 182; *State v. Zinn,* 61 Mo. App. 476; *Edwards v. Territory,* 1 Wash. T. 195; *People v. Deacons,* 109 N. Y. 374, 16 N. E. 676; *State v. Day,* 79 Me. 120, 8 Atl. 544; *Hawkins v. State,* 136 Ind. 630, 36 N. E. 419; *Hanrahan v. People,* 91 Ill. 142; *People v. Phillips,* 70 Cal. 61, 11 Pac. 493; *Tidwell v. State,* 70 Ala. 33; *Wiborg v. United States,* 163 U. S. 632, 41 L. Ed. 289.

On the only questions upon which different conclusions might have been drawn under the evidence, namely, whether any of the shots were fired at Eva Ford, and if so, whether with the intent

on the defendant's part to kill her, the jury were correctly instructed; and we find no cause for a reversal.

Let the judgment be affirmed.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.