Sylvester BEARSHIELD, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant
in Error.

No. A–12510.

Criminal Court of Appeals of Oklahoma.

Nov. 13, 1957.

Meacham, Meacham & Meacham, Clinton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Plaintiff in error, Sylvester Bearshield, hereinafter referred to as defendant, was charged by information in the District Court of Custer County, jointly with one Nathan Ellis, with the crime of murder. A severance was granted and the defendant tried separately to a jury, convicted, and the punishment was fixed at life imprisonment in the state penitentiary. Judgment and sentence were entered accordingly from which this appeal has been lodged.

The evidence reflects that the defendant and Nathan Ellis, a co-defendant, were riding in the deceased's car, along with deceased's wife and two children. After consuming several bottles of homebrew, an argument and altercation took place between the three men in which the deceased, Victor Quick, lost his life as a result of numerous stabs with the necks of broken bottles and a knife which caused deceased to bleed to death.

The defendant contends that the verdict is not sustained by the evidence but with this we cannot agree. The record reveals a flagrant conflict in the testimony of Mrs. Mary Quick, wife of the deceased, and Mary Virginia Quick, a daughter, with that of the defendant Bearshield. However, we have made a careful study of the record in this respect and find that the testimony of the state's witness is ample to support the conviction if believed by the jury. This court is bound by a long line of cases that where there is conflict in the testimony it creates a question for the jury. It is their exclusive province to ferret out the truth, and if there is any competent evidence supporting the jury's verdict, it will not be disturbed on appeal for insufficiency of the evidence. See Criner v. State, Okl.Cr., 312 P.2d 903; King v. State, Okl.Cr., 305 P.2d 589; Dodson v. State, Okl.Cr., 284 P.2d 437. In the instant case we feel the verdict is supported by the evidence.

Defendant further contends that the trial court erred in admitting incompetent testimony arising out of a hypothetical question propounded to Dr. Ross Deputy, an M.D., who testified for the state. The questions and answers were as follows:

"Questions by Mr. Donley:

"Q. Would you state your name, Please? A. Ross Deputy.

"Q. You are the same Dr. Deputy that testified earlier here in this trial? A. This afternoon; yes sir.

"Q. Now Doctor, the evidence by the defendant has been that he was standing next to the car door of the car, this being the front seat, driver's seat of the car, and that he was standing here and that the dead man Victor Quick came at him like this—down at him with a bottle in his hand, his evidence was that he then began to stab at the defendant—at the dead man like this holding the bottle—

"Mr. Meacham: He is assuming a state of facts that is not correct.

"The Court: Overruled.

"Mr. Meacham: Exception.

"Mr. Meacham: His testimony was he was sitting down, and that he was down in the seat enough that he sat on a bottle.

"The Court: Overruled.

"Mr. Meacham: Exception.

"Q. That the man Quick had a bottle in his hand, according to his testimony, that he then began holding the bottle—had the bottle held just like that with the top of the bottle around under his little finger, and he then began to jab at the dead man Quick with his head down like that—this happening right here beside the car. Now, the testimony also has been that the dead man Victor Quick was six feet two inches (6' 2") tall, and that the defendant said he was five feet and eleven inches (5' 11") tall. I want you, if you remember, to tell this jury which was the wound on his neck, on the left side, and the wound under his armpit, which direction were those wounds? Up, down, straight in, or what? Take them one wound at a time, if you will? A. If I may answer the first part, I would agree with what the defendant said that he probably jabbed him with something, because there were multiple lacerations.

"Q. He was jabbed someway? A. Yes. The other thing, this left arm— the picture that you gave me, and which it showed—the skin was cut from the distal end, so the arm had to be up in this position and cut down. So he had to be coming down to cut it at that time.

"Q. You would say that whoever did it had the bottle in that position rather than in this position? (Indicating.) A. At the time that happened, yes. The wound in the neck, the left side was from an overhand—downward and back toward the vertebrae; and the wound under the arm was downward and inward.

"Q. Then the wound would be caused from—is that what you are saying, the wound was caused from a downward blow rather than from an upward blow?

"Mr. Meacham: That is hardly within medical science. We object to that.

"Q. But you say the direction of the wounds were down, is that right? A. Those deep penetrating wounds, yes.

"Q. Doctor, from your examination of those wounds, all of the wounds on this man's body, how would the blood flow after those wounds were made? A. This is kindly crude, but kindly like a stuck hog.

"Q. Kindly spurt, is that right? A. Yes, sir; because they were large vessels that were cut.

"Q. If it happened out on the road as the defendant has testified, and that damage was done by the defendant as he testified would there be any blood around on the ground? A. There would be blood wherever it was done.

"Q. Would you say a little bit, quite a little bit, or a whole lot? A. There would be a great deal of blood. A great amount of it.

"Q. Then you would say at the time this dead man received the blows, his arm was up in the air? This wound here on the arm? A. Yes, sir. At least the part that tore this part loose here and brought it down. (Indicating.) His arm had to be above.

"Q. Would you say that the man could have been setting down like this in the seat, down like this, with his arm up like that, and someone standing outside and the blows coming down like that? Could that have caused the wounds that you saw?

"Mr. Meacham: That is argumentative.

"The Court: Sustained.

"Mr. Donley: Exception.

"Q. That is all.

"Mr. Meacham: No questions."

No cases are cited in support of this contention. However, we have carefully examined this testimony and though it presents a very close question of law, we do not feel that the witness exceeded the gen-

eral rule applicable to expert testimony in the absence of proper objection. The general rule appears to be that expert testimony is not admissible as to any matters which are within the general knowledge of understanding of mankind generally and is confined to questions requiring special skill or scientific knowledge. See Byers v. Territory, 1 Okl.Cr. 677, 100 P. 261, 103 P. 532; Price v. U. S., 2 Okl.Cr. 449, 101 P. 1036.

In the instant case, the defendant's defense was that of self-defense. In supporting this plea it becomes important as to the position the deceased was in at the time the fatal wounds were inflicted. The evidence reflected a drastic conflict in this respect. The state called Dr. Deputy in rebuttal, evidently for the purpose of refuting defendant's theory as to the place and position of the assaulted at the time of the altercation. Where such a conflict exists, the better rule would be for the witness to relate the facts, that is, to describe the wounds, the location upon the body, the depth, and angle which they reflected from the penetration, etc., but to testify as to the position of the deceased at the time said wounds were made would require no particular line of scientific skill, and would consequently invade the province of the jury, and where a conflict in the testimony existed, would put the doctor in the position of passing upon the credibility of the witnesses from whose testimony the hypothetical question was based. See Wharton Criminal Evidence, Vol. 2, page 348, § 521. The question as to position of the defendant's arm could have been answered by the court or jury as accurately as by the witness, and after the facts had been related by the expert witness, the jury was entitled to draw their own conclusion as to the position of the deceased. A long line of cases in support of this rule would have justified relief, but we cannot by the most liberal construction say that timely or proper objections were made by the defendant. It is to be noted that when the hypothetical question was propounded, counsel for the defendant commented, "He is assuming a state of facts that is not correct." This can hardly be considered an objection, but merely a comment upon the testimony and had it been intended to be an objection specific grounds should have been stated. The jury was the judge of what the testimony was and comments back and forth between opposing counsel would neither change the testimony nor serve as an objection. When the county attorney asked the witness whether or not the wound was caused by a downward blow, defendant's counsel stated, "That is hardly within medical science. We object to that." This objection was timely and proper and had the question been answered over the objection of counsel, error would have been committed. However, the record shows that the county attorney abandoned his question by asking another as to the direction of the wound which was within the witness's expert knowledge. The only other objection was sustained by the trial court and no answer given. The witness in one place went too far in answering "Yes" to the question that the deceased's arm was up in the air at the time the blow was executed, but no objection was made, nor exception taken, thus waiving his right to complain.

Next, defendant complains that the evidence given by Chief of Police Garland Hanks was incompetent and thus the court committed error in admitting same. The evidence complained of is as follows regarding reputation of defendant:

"Q. Do you know Sylvester Bearshield? A. Yes, sir.

"Q. How long have you known him? A. Maybe five (5) years, maybe longer one way or the other.

"Q. Do you know what his reputation is down there at Clinton? Answer 'yes' or 'no.' A. Well, all I could speak for is the records that show at the Police Department.

"Q. What do they show?

"Mr. Meacham: The records would be the best evidence.

"The Court: Ask him if he can remember independent of the record.

**466**

"Q. Don't you have some personal knowledge as to his reputation one way or the other? A. Well, all I could speak for is the times that he has been arrested and I have looked at those; 22 times.

"Q. 22 times? A. Yes, sir.

"Q. Do you know from your own personal knowledge what it was for? A. Well, it was drunk, fighting, disturbance, and I believe one time for drunk driving.

"Q. That is all."

We are in accord that this testimony was improper and should have been excluded and had proper objection been interposed, would have been a meritorious contention. However, the only comment by defense counsel was "the records would be the best evidence." The trial judge evidently agreed as he asked the witness if he had knowledge of the defendant's reputation independent of the record. The answer was not responsive to the court's question and should have been stricken and the jury admonished not to consider same, but no objection was offered nor request made. There was no ruling by the court on this matter and no exception saved. This court has said in numerous cases that when evidence is admitted without objection it is too late upon appeal to complain of the introduction of such evidence. See Gritts v. State, 6 Okl.Cr. 534, 118 P. 673, 120 P. 669; Drury v. Territory, 9 Okl. 398, 60 P. 101; 23 C.J.S. Criminal Law § 1060. This court also said in Bartell v. State, 4 Okl.Cr. 135, 111 P. 669:

"An assignment that the trial court erred in admitting certain testimony will not be considered where no exception was taken to the court's ruling."

This case falls within this ruling. No objection being made nor exceptions saved, the assignment of error is therefore unavailing.

Defendant's fourth assignment of error contends the verdict was excessive. In view of the testimony in this case, we can attach little importance to this asser-

tion. The crime of which the defendant was convicted carries a penalty of life imprisonment or death. The jury was the sole judge of the weight and sufficiency of the testimony which was ample to justify their verdict. They inflicted the lesser of the two degrees of punishment prescribed for murder and we find no valid reason to interfere with the judgment and sentence. It is therefore affirmed.

BRETT, P. J., and POWELL, J., concur.