Macie Lee PLUMLEE, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12900.

Court of Criminal Appeals of Oklahoma.

April 5, 1961.

224

Sullivan & Baucum, Duncan, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BOB PARKS, Special Judge.

Defendant, Macie Lee Plumlee, was charged in the District Court of Comanche County, Oklahoma, by information with the murder in Comanche County of Darwin Rutkowski. The record discloses that the deceased, Darwin Rutkowski, was married to the daughter of defendant and that defendant and her husband and deceased and his wife were all residents of the city of Lawton, Comanche County, Oklahoma. It further appears that Darwin Rutkowski married defendant's daughter in secret and over the objection of defendant and her husband; that the parties had had some minor troubles among themselves but had adjusted their differences. At the time of the tragic incident, it appears that the deceased was being discharged from the United States Army and was planning to leave Lawton and the State of Oklahoma, and was planning to leave his wife, who was pregnant, with defendant and her husband until after the arrival of the baby and until he could get settled and send for his family. Defendant and her husband felt that deceased's wife should accompany him on his departure and made their plans accordingly.

On the morning of the fatal incident, defendant and her daughter were sorting clothing and packing, preparatory to the departure of Mr. and Mrs. Rutkowski for the state of Wisconsin. Defendant and her daughter were alone until sometime after noon at which time the deceased came to the house. There apparently was some discussion and dispute between deceased and defendant regarding whether or not his wife would accompany him on the trip to Wisconsin, and a scuffle followed. De-

fendant then left the premises and returned later with her husband to pick up a chest of drawers. Defendant's husband and the deceased carried the chest of drawers from the house and to a car for the purpose of loading it into the car for transport. Defendant waited in the yard by her car. There is a sharp conflict in the testimony as to what happened next; suffice it to say that defendant fired several shots into the body of deceased which caused his death.

The shooting and subsequent death of deceased are all admitted and not in dispute. Defendant pleaded self-defense, the jury determined her guilt and punishment was assessed as heretofore set out.

■ We are not here concerned with the guilt or innocence of defendant; her guilt has been determined by the trier of fact. Our concern is with the alleged errors of law which occurred prior to and during the trial, which we will consider under the six separate propositions set forth.

First: Error of the Court in permitting witness, over the objection of defendant, to testify in rebuttal as to specific matters to which the witness had already testified on direct examination.

The only question involved in this suit was whether the defendant killed the deceased in cold-blooded murder, as contended by the state, or whether she was acting in self-defense as claimed by the defendant, her husband, and Sue Ellen Southard, a neighbor girl. The defendant and her husband both testified that the chest of drawers had been set down prior to the shooting. Sue Ellen Southard testified that the chest was being carried at the time of the shooting. After both the state and defendant had completed their testimony in chief, the State, as a part of its rebuttal, and over the objections of the defendant, recalled Sue Ellen Southard and questioned her as follows:

"Q. Mrs. Southard, did he have the chest in his hands at the time he fell? A. Yes, sir, he did.

"Q. At that time, did you know Mrs. Plumlee? A. No, sir.

"Q. Did you know the Rutkowskis? A. No, sir."

After which defendant moved to "strike the testimony of this witness as not being proper rebuttal evidence, serves only to reiterate and emphasize to this jury her testimony and is improper and prejudicial to the rights of this defendant". Defendant was overruled and given an exception. We are of the opinion that the court committed error in allowing the witness to so testify. This court in Doser v. State, 88 Okl.Cr. 299, 203 P.2d 451, 471, said:

"This proposition is well taken since the so-called rebuttal testimony reveals nothing that had not already been substantially covered in the sheriff's testimony in chief."

In Corliss v. State, 12 Okl.Cr. 526, 159 P. 1015, this Court condemned this procedure and therein said:

"The Court should not permit a rehash of such testimony under the guise of rebuttal. Counsel for the state have no more right to reserve the principal testimony and introduce it under the guise of rebuttal, * * * than the accused would have to reintroduce his testimony after the state has closed its rebuttal."

The Doser case, supra, and the case at bar should be distinguished from the case where evidence in chief is not introduced initially and is preserved for rebuttal, subject to the discretion of the trial court. In the case at bar, the so-called rebuttal testimony was identical, almost to the word, of the testimony of the same witness in her previous testimony.

Second: Misconduct of the County Attorney in his final argument.

We have examined the entire record and the briefs submitted with regard to misconduct. The record does not contain a transcript of the final arguments to the jury and we are unable to ascertain whether there is any merit in this contention.

Third: Error in permitting endorsement of the names of witnesses upon the information after the defendant was arraigned.

■ We find, from an examination of the record and a study of the briefs, that original counsel was allowed by the court to withdraw on October 28, 1959, defendant appeared for arraignment on January 15, 1960. When these witnesses came to the stand and testified, no objections whatever were raised by defendant's counsel. After the state rested its case, counsel made an objection by making a motion to strike from the record the testimony of certain witnesses. We find that the record shows technical compliance with the constitutional provision, Article 2, Section 20, and with the statutory provisions, including 22 O.S.1951 § 303, and with prior decisions of this Court, Britt v. State, Okl.Cr., 285 P.2d 441, 444 and cases therein cited, wherein the rule was approved as follows:

" 'The trial court in the exercise of judicial discretion may permit the name of a witness to be endorsed upon the information even after the trial has commenced. If defendant's counsel is surprised at such action and such endorsement of an additional witness requires a production of further testimony by defendant, *he should withdraw his announcement of ready for trial and should file a motion for a postponement or a continuance* in which he should set out the facts constituting such surprise, and the other evidence, if any, he could produce to rebut the testimony of such additional witness if the trial of the case was continued. *Where he fails to do this the error, if any, is waived.*' " (Emphasis ours.)

This Court has had this question presented many times and has announced its feeling in this regard subsequent to the Britt case quoted above as follows:

"We feel that the trial court should exercise this discretion with the utmost precaution and to ascertain within rea-

sonable means that the county attorney is acting in good faith. This rule has not been adopted to permit the county attorney to lay behind the log and spring new witnesses on the day of trial, but to place a liberal construction upon the statutes as to meet the ends of justice. The failure to endorse witnesses before trial must be by virtue of inadvertence and in good faith, and in any event, permitted only where the defendant's rights are not prejudiced by said endorsement." Miller v. State, Okl.Cr., 321 P.2d 390, 394.

While there may be some merit in this contention, we are unable to say that the trial court abused its discretion in this matter and since it was shown that a technical compliance with the applicable provisions of the law was had, we are unable to say that this alone would be grounds for reversal; however, from a study of the record, it appears that the names of the witnesses were known to the county attorney prior to the arraignment and prior to the time of the endorsement as shown by the cross-examination of the witnesses; we mention these facts not to condone or condemn, but to admonish the courts and prosecutors that this Court will not sanction a loose construction of the statutes when the life or liberty of an individual is involved and that a strict compliance with procedural matters must be adhered to in all instances. We presume, in the instant case, that the trial court made a finding that the county attorney did not know the names of the witnesses at the time the information was filed.

Fourth: Error in permitting County Attorney to read to the jury a purported statement made by the witness without limiting the purpose for which the statement was admitted in evidence.

■ We find that the written statement to which the county attorney referred, was never offered in evidence, but when presented for identification, counsel made an objection to it as being "incompetent, irrelevant and immaterial as a statement not made under oath and is not admissible in

evidence; and if counsel wants to cross examine on it, we have no objection". After a reading of the statement, the witness said he made the statement and verified it. We are unable to find any error of the court herein as contended by defendant.

Fifth: Error in permitting the witness to testify as to the direction the bullets came before entering the body, over the objection of defendant.

We find that at the commencement of the trial and before the introduction of any evidence, the counsel for defendant entered into a stipulation with the state, in which they admitted the fatal shots, and locations in the body of the deceased, and that the shots were the cause of deceased's death. Subsequently, the state, over the objection of the defendant, introduced testimony as to the direction of the bullets' course prior to entering the body; and later during the trial, and over the objection of defendant, the state introduced the clothing worn by deceased at the time of the shooting. The general rule was announced by this court in Bearshield v. State, Okl.Cr., 318 P.2d 462, 465 as follows:

"The general rule appears to be that expert testimony is not admissible as to any matters which are within the general knowledge of understanding of mankind generally and is confined to questions requiring special skill or scientific knowledge."

We conclude that defendant's contention here has considerable merit. The witness was not qualified as an expert in the field of ballistics and was therefore incompetent to testify as to the direction the bullets travelled before entering the body. We must assume that the introduction of the clothing of deceased was allowed for the purpose of allowing the jury to determine these questions for themselves and we therefore conclude that the testimony of Dr. Couch was not only incompetent insofar as he testified as to the course of the bullets, but that it also invaded the province of the jury. The objection by defendant to this line of testimony should have been sustained. We do. not think in the instant case that the state should be allowed to introduce such testimony and the bloody clothing in view of the stipulation as such conduct could only serve to add undue emphasis and consequently inflame the jury. The two together only add the pint of blood to the pound of flesh.

Some mention is made of defendant's cross-examination of the witness as to the direction of the path of the bullets constituting a waiver of the objection to his competency as a witness. We follow the general rule that an objection to the competency of a witness is not waived by the cross-examination of that witness.

Sixth: That the punishment assessed by the jury in the verdict of a life sentence was excessive and constitutes extreme and unusual punishment and not justified by the evidence.

We find considerable merit in this contention. The jury found the defendant guilty of murder and assessed the punishment as required by law. We are unable to say that the jury did not exercise their duty properly and with due regard to their oath and instructions. We do agree that because of the errors heretofore mentioned, the jury may have been unduly influenced and because of such influence, may have assessed a greater and more severe penalty; however, we refuse to speculate as to this matter, and hold that the punishment as assessed, in view of the error committed, was excessive and the same should be modified.

"Where the Court of Criminal Appeals is of the opinion that the punishment is severe and unjust, and in part the result of prejudice, the remedy is by modification, and not reversal." Busby v. State, Okl.Cr., 358 P.2d 661.

This case represents and shows the tireless efforts of counsel for both the state and the defendant; the hardship of assuming employment in an important case immediately prior to trial, it shows further, through this appeal and the oral arguments presented to this court; that our Bench and Bar are dedicated to the promotion of Justice. The case was well briefed by both the Attorney Gen-

eral and counsel for the defendant; oral argument was well presented, and was most helpful in arriving at a conclusion. To them we extend our sincere thanks and commendation. We are of the opinion that for the reasons set out herein, the judgment and sentence imposed herein should be and the same are hereby reduced to manslaughter in the first degree and the sentence is modified to 25 years; otherwise the same is in all things affirmed.

NIX and BRETT, JJ., concur.

POWELL, J., disqualified himself.