**Walter Lee GATLIN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. F–75–799.

Court of Criminal Appeals of Oklahoma.

Aug. 10, 1976.

Rehearing Denied Aug. 27, 1976.

Charles W. Stubbs, Stubbs, Stiner & Pace, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Joe Mark Elkouri, Legal Inetrn, for appellee.

## OPINION

BLISS, Judge:

The Appellant, Walter Lee Gatlin, hereinafter referred to as defendant, was charged, tried in a two-stage proceeding before a jury and convicted of the crime of Pointing a Weapon at Another in violation of 21 O.S. § 1289.16 in the District Court of Oklahoma County, Case No. CRF–74–3823. Punishment was assessed at a term of twelve (12) years under the custody and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in conformance with the verdict, the defendant has perfected his timely appeal.

Briefly stated, the evidence adduced at trial is as follows: Oklahoma City Police Officer James Charles Miller testified that in November of 1974, he was on special assignment with the narcotics division and at approximately 12:30 a. m. on the 9th of November 1974, he had occasion as an undercover agent to be at the Bootlegger Club in Oklahoma City in the company of an informant Paula Reynolds. While in the club he had a conversation with the defendant concerning the possible purchase of some drugs. At approximately 1:45 a. m. the witness and Ms. Reynolds proceeded to leave the club and as the witness stepped from the door he was hit in the face by the defendant. He was then struck from behind and fell to his knees at which time the defendant kicked him in the face and Miller lost consciousness for a few seconds. After he regained his senses but while still lying on the ground the defendant removed Miller's loaded .38 caliber pistol, pointed the pistol at the witness with the barrel a few inches from his head and stated that he was going to blow his "pig head off". Miller was then kicked several more times, became unconscious and the next thing he knew he was in the hospital where he remained for 11 days recovering from nose, jaw and cheekbone fractures.

Paula Jane Reynolds then testified that on the day in question she accompanied Officer Miller to the Bootlegger Club owned by Shirley and Bob Mead, the defendant's mother and step-father. At approximately 2:00 a. m. the witness and Miller left the club and were followed out the door by the defendant and a Don Gilbert. As they walked towards the car somebody yelled for Miller to turn around and when he did Gilbert struck Miller in the face and commenced to kick him when he fell. Mr. and Mrs. Mead then came out and Gilbert quit beating Miller. At that time Miller, who was lying on his face, rolled over and the defendant reached down and took a gun which had been concealed in Officer Miller's pants. The defendant then put the gun to Miller's head and said "I'll blow your head off". On cross-examination the witness admitted that she was under a narcotics charge at the time of the incident, was on bond and was an informant. She further stated that on Miller's instructions she attempted to buy marihuana from the defendant. The state then rested.

The defense then called Bobby Joe Mead who testified that he was the defendant's

step-father and that his wife operated the Bootlegger Club. On the evening in question they were leaving the club after closing when he heard a scuffle, looked around and thought the defendant was being beaten. He then went over and pulled Don Gilbert off of Miller. Gilbert and the witness began to struggle in the darkness and Miller got up and ran off. Although the defendant was close, the witness stated he never saw a gun and never saw the defendant point a gun at the officer. Mead further testified that he observed Gilbert kick Miller when he was down and that Gilbert stated at the time that Miller had a gun and was going to shoot the defendant.

The defendant's mother, Shirley Mead, then testified that she owned the Bootlegger Club, that during the evening in question she saw Paula Reynolds and Miller in the club and that Miller was drinking beer and whiskey. After closing she and her husband observed a fight in the parking lot and mistakenly thought that the defendant was being kicked and beaten. Her husband intervened and pulled Donnie Gilbert off Miller. She further stated that Gilbert told her that Miller was going to shoot the defendant and that prior to leaving the club she had occasion to dance with Miller and he appeared to be jealous because the defendant was dancing with Paula Reynolds.

Robert South then testified that on the evening in question he was at the club and had occasion to observe a fight between Donnie Gilbert and a man with a beard and that the man with the beard was badly beaten and staggered off. He further stated that the defendant was there but he did not see a gun and did not remember the defendant being near the man on the ground. On cross-examination he stated that when he came out of the club the fight was already in progress and that he had known Gilbert and the defendant for quite some time.

The defense then called 5 subsequent witnesses who, each testified that they had each been in the club on the evening in

question, that Miller had been drinking and that they did not see the altercation. The defense then rested and the jury subsequently returned a verdict of guilty in the first stage of the proceeding.

During the second stage of the proceeding the defendant stipulated to the three previous convictions alleged by the state, that each was final and that he was represented by counsel in each case. The defendant then took the stand to testify in his own behalf and attempted to deny his guilt in the instant case and to collaterally attack the prior convictions. Such testimony was not allowed by the trial court and the defense rested. After deliberation the jury returned a verdict assessing punishment as set out above.

■ The defendant's first assignment of error urges that the trial court erred in making remarks to the jury during its deliberation. The record reveals that the first remark complained of occurred after the jury had retired for deliberation during the first stage of the proceeding when the trial court called them back into open court to determine if there was a reasonable probability of their reaching a verdict.

In *Reed v. State,* Okl.Cr., 335 P.2d 932, this Court held that it is not improper for a trial judge, after a jury has been deliberating for some time, to call them into court to ascertain whether there is a reasonable probability of reaching a verdict so long as the trial judge exercises great caution to say nothing to coerce an agreement or to indicate his feelings in the case. See also *Calhoun v. State,* Okl.Cr., 406 P.2d 701. In the instant case the trial judge in no way intimated his personal opinion and did not attempt to coerce the jury.

■ The second remark occurred after the defendant had stipulated to his prior convictions, the trial judge had submitted instructions and the jury had retired to deliberate. The record reflects that the jury returned to open court in the presence of the trial judge, counsel and the defendant at approximately 11:25 a. m. and stated

they had not reached a verdict and wanted a lunch break. At that time the judge denied their request for a lunch break and made the following remarks:

"THE COURT: All right. Of course, you cannot have a hung jury in this phase of the case because—

FOREMAN: We realize that.

THE COURT:—I have given you an instruction that will take care of that. I didn't know whether you understood that or not.

FOREMAN: Yes, you have."

It is apparent that the trial judge did not attempt to coerce the jury or indicate his personal opinion concerning punishment. The trial court had submitted an instruction stating that if the jury found the defendant guilty of a former felony conviction then it could assess punishment as instructed or leave punishment to be assessed by the court. The judge's remark was only of reference to that instruction and prejudiced the defendant in no way. The defendant's first assignment is without merit.

The defendant's second assignment contends that the trial court erred in allowing the jury to separate after its verdict in the first stage of the proceeding and prior to the submission of any evidence in the second stage of the proceeding. In support of his contention the defendant cites 22 O.S. § 857 which reads as follows:

"After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court."

However, in the instant case the jury had returned a verdict of guilty in the first stage of the proceeding. They had not yet heard any evidence concerning the second stage and the court had not submitted instructions concerning same. Since the first stage of the bifurcated proceeding had been completed the trial court did err in allowing the jury to separate for the night. No evidence had yet been presented in the second stage and the defendant fails to show any prejudice which occurred to the defendant. See *Martin v. State*, 58 Okl.Cr. 187, 51 P.2d 584. The defendant's second assignment is without merit.

The defendant's third assignment of error contends that the trial court erred in commenting upon the evidence and conclusions to be reached by the jury thereby invading the province of the jury. We do not agree.

Essentially the defendant complains of the following comment made by the trial court to the jury during the second stage of the proceeding after the jury had returned to open court to state that they had not yet reached a verdict:

"THE COURT: . . . I just—there is a form of verdict for you to use if you can't agree on the punishment.

FOREMAN: Yes, sir, that's—

THE COURT: You understand in this case they have stipulated—the Court prepared the instructions before they entered into the stipulation. They have stipulated the Defendant was— has sustained former convictions of felonies, so you don't—and that does away with you having now to decide whether he was formerly convicted because they have admitted that he was formerly convicted, so all you have to do is decide the amount of punishment to be given to the Defendant for his conviction of pointing a weapon after former conviction of a felony. That's all there is before you. And if you can't agree on punishment, there is a form of verdict that will apply in that case."

Our interpretation of the above comment by the trial court is that it was an attempt to withdraw a portion of the instruction requiring the jury to determine whether the defendant had a prior conviction. In *Jones v. State,* Okl.Cr., 527 P.2d 169, this Court held that when the defense stipulates to a former conviction there is no question of fact to be determined by the jury other than guilt of the offense charged and punishment. Instructions assuming a fact as to which there was no conflict in evidence is not erroneous as invading the province of the jury. *Bartell v. State,* 4 Okl.Cr. 135, 111 P. 669 and *Houston v. State,* 43 Okl.Cr. 181, 277 P. 687. The trial court at any time before a verdict has the power and duty to withdraw instructions which are erroneous. *Elms v. State,* 53 Okl.Cr. 268, 10 P.2d 728. In the instant case it is our opinion that the trial court did not abuse its discretion in informing the jury during deliberation that it need not determine whether the defendant has suffered a prior conviction since that fact had already been stipulated to by the defendant. The defendant was in no way prejudiced by the remark of the trial court and the defendant's contention is meritless.

The defendant next contends that the trial court committed reversible error in failing to allow the defendant to testify in his own behalf. The record reveals that after the defendant stipulated to his prior convictions during the second stage of the proceeding he took the stand and attempted collaterally to attack his prior convictions and to deny that he had committed the crime for which the jury had just returned a verdict of guilty. In both instances the trial court sustained the state's objections. Since the defendant had stipulated to the prior convictions and since the jury had just returned a final verdict of guilty in the instant case it cannot be said that the trial court abused its discretion in refusing to allow the defendant to impeach his present and former convictions. It had been stipulated that each prior conviction was final, that the defendant was in fact the person named in each judgment and sentence and that defendant had been represented by counsel. With reference to the instant charge the jury had just returned its verdict of guilty and the defendant's subsequent claim that he was innocent of the charge was not relevant to the second stage of the proceeding. In *Bald Eagle v. State,* Okl.Cr., 355 P.2d 1015, this Court held that it was error to permit the prosecuting attorney to go into details concerning the crime for which a defendant has been formerly convicted as that is a collateral matter not relevant to crimes charged. In the instant case it would have also been error to allow the defendant collaterally to attack the former convictions after the stipulations set out above. The defendant's contention is without merit.

Defendant's next assignment of error urges that the trial court committed reversible error in failing to submit instructions on lesser and included offenses. We disagree. In the instant case the defendant was charged with a violation of 21 O.S. § 1289.16 which reads in pertinent part as follows:

"It shall be unlawful for any person to willfully or without lawful cause point a shotgun, rifle or pistol, or any deadly weapon, whether loaded or not, at any person or persons for the purpose of threatening . . . .."

In the instant case the defendant denied having any part in the altercation. He was therefore either guilty of the crime charged or innocent. There was no evidence presented which tended to prove that the defendant was guilty of reckless conduct, 21 O.S. § 1289.11, as argued by the defendant in his brief. Therefore the trial court did not err in refusing to instruct on same. See *Groom v. State,* Okl.Cr., 419 P.2d 286. The trial court correctly instructed the jury on the applicable law in the instant case and defendant's contention is without merit.

The defendant's last assignment urges that there was an absence of essential fair-

ness to the defendant. Again we disagree. From an examination of the record as a whole it is our opinion that the defendant received a fair and impartial trial before a jury and that no material right of the defendant was prejudiced. The defendant's last assignment is without merit and the judgment and sentence appealed from should be, and the same is hereby AFFIRMED.

BRETT, P. J., and BUSSEY, J., concur.